Good morning. My name is Michael Doerr, Pro Bono Counsel for Appellant Salvador Solis. I hope to reserve four minutes for a rebuttal, but I'll watch the clock. May it please the Court, we're really asking the Court to do two things. First, to reverse the district court's partial grant of summary judgment. This Court follows the bright-line rule that requires a pro se prisoner litigant to receive notice of Rule 56's requirements on summary judgment. Let me ask you a question on that. Obviously, he did not get the Wran notice. There's kind of a lingering question about the extent to which harmless error analysis applies. And we sort of suggested that the heart of that analysis would be whether the person who didn't get the notice nevertheless understands the mechanics of summary judgment and the consequences. I've got a slightly different focus to my question, and that is, is it substantively harmless here because his 1983 claim actually preceded, so it couldn't have made any difference on that claim? The same, I think, would be the case with the Monell claims and as to Baca, as to which there was no arguable evidence that could have been adduced. So my question is, is the Wran notice harmless? Is the absence of the Wran notice harmless as to those claims? We believe it's not harmless, Judge Reimer. First, in Wran, the en banc court held that notice itself was a substantial right. So the lack of the notice itself, we believe, was a denial of substantial right. Yes, but we left open the door to harmless error analysis. Understood. Okay. The court held that harmless error only applied in the most exceptional case, in which we believe, obviously, that this case has not exhibited anything unique in that context. Even then, the Court said it was an objective inquiry. If the plaintiff, for example, received Wran notice in the prior case, if the plaintiff had cited Wran in his brief, objective factors. The Court explicitly rejected a subjective analysis of the plaintiff's papers, for example, to determine whether or not notice was required. Grant, oh. Yes, but let's just take a simple, straightforward example. Let's just take his 1983 claim. I mean, he wins on it. It goes to trial. What? You wouldn't want that vacated, surely, because he didn't get Wran notice. Understood. And the --"that Solis prevailed against all odds on that claim, and that there was evidence in the record to get him." Did we undo that? I mean, look, this whole case is bad. I mean, everything about it is bad. So it's kind of the one thing that I'm at that can be saved from it. And I'm just wondering, do you, if you prevail on the Wran notice, then do you want the part that you won on gone, too? I guess that depends on your own side. That's going to tie into another question I had, which is, can you appeal on the claim that you get a jury and ask us to reinstate — well, first you ask us to reverse the verdict and find that your client won without a jury. Can you ask us to do that and say, if we won without a jury, give us a verdict, but if we lost without a jury, then vacate? It's the same kind of issue that Judge Ryan was asking about summary judgment, although I think the summary judgment answer may be easier than the other. If I may address the summary judgment point, and then I'll address the jury point. In footnote 9 of Wran, the Court said that there is a — of course there will be harmless error if there's nothing in the record that could suggest you prevailed on these claims. In my mind, that begs the question, because the record itself is deficient. If he did — if Wran holds that litigants are apt to withhold evidence and not put it in the record on summary judgment, to then use the record as the basis for finding that he couldn't have prevailed on the Monell claim or the other claims, is it itself undermines the entire purpose of the Wran requirement. Now, granted, if I understood your question, should he be able to keep the judgment against Beltran, having not received the notice as to everybody, including the other defendants? We think he should, because there was evidence in the record to support his claim against Beltran. It doesn't take away from the fact that he may have provided additional evidence as to the defendants who, in fact, were dismissed as a result of the summary judgment board. And I can return to that. As far as the jury question is concerned, we feel that on the facts found by the Court, that established the legal violation. Now, to the extent we feel that the facts found by the Court were a product of a series of errors, nevertheless, if that sufficed, if that passed the threshold and met the requirements, we feel that the Court would not do everything because we're saying that these facts were impacted by the lack of a jury, by the lack of counsel, et cetera. So to the extent, then, that those facts are deemed not to satisfy the test, or from your reading of the Court's statement of decision, you feel that applying the de novo standard here to this issue, the legal, whether there was a violation here of the 18th Amendment in 1983, nevertheless, we feel that if you find that, okay, that wasn't a violation, then clearly, then, we would think that the lack of a jury trial impacted that and impacted whether or not he could have met the bar and thus established that test. So if he passes it on to the court. Kennedy, Your saying really is to both it's a question of harmless error, that as to the unsummary judgment, as to the one defendant as to whom you prevailed, the error was harmless because you prevailed anyway. And as to the others, it's not harmless. So I guess your answer to Drama's question is at least to some extent, harmless error is important. I would agree with that, Your Honor, to the extent that the whole purpose of the RAND requirement in our mind is to ensure that the – there is an adequate record. So, granted, that – if it was an error for the court not to provide Solis notice as to any of the defendants because he didn't receive it on summary judgment as a whole, it is true that if then he was able to – if there – Are you saying that in this case, it's not harmless error because you can't tell what else he would have provided? I mean, suppose it's a case where it's clear as a matter of law. He's pleaded something that just doesn't make it without looking at the record, without looking at anything. Then it wouldn't be harmless error. If he said, you know, I'm – the Constitution doesn't apply to me because I'm a male and summary judgment were granted on that claim, that would be harmless error, I assume, because nothing in the record could change that decision. I agree with that, Your Honor. I think that's where the reference to Conley v. Gibson in footnote 9 is important, where that was a matter of there was nothing – there was no allegation that in looking at the record could satisfy a legal claim. There, there's a finite list of allegations in the complaint. So there's something you can look to. Well, are you saying that in this complaint as to the ones on which summary judgment was granted, those – there is a possibility that they could have survived summary judgment, had proper notice been given? That is exactly what we're saying, Your Honor. That – and I think the – And is that because it's something you find in the record or something that you feel that – it's not clear that with further development of the record that there couldn't be a claim? Judge, I would say both. I would say that, first, we cite the deposition transcript of Solis where he talks about that there is a pattern, or at least there were other inmates placed in the gang unit when they refused to cooperate. That would suggest that there was a pattern here and something that would implicate Monell liability. Beyond that, again, I think we get back to the issue of the sufficiency of the record. To the extent there are other issues there that Solis may have presented, that they are not in the record is essentially the whole point of the Rand requirement. If he had notice, they may be in the record. So to rely exclusively on the record sort of undermines, again, the purpose of the Rand requirement. That being said, as we note in our briefs, there is the testimony as to other inmates suffering the same fate that Solis testified he had experienced. Now, if I could move on to another clear error that we feel took place here, and obviously, it's dependent on this Court's adjudication of the statement of decision, the timeliness of the motion for reconsideration was denied as untimely. So we believe that based on Rule 58, that was a clear error by the district court and an inherent abuse of discretion. So to the extent this Court was inclined to affirm the statement of decision, that remains an error that would require reversal here because the Court never considered Solis's argument in his motion for reconsideration, among other things, that it was a manifest injustice to, on the one hand, say that there was insufficient evidence provided by Solis, and on the other hand, say that the county, that Deputy Beltran was less than forthcoming with evidence. That is an argument the district court never considered on reconsideration because it ruled the motion was untimely. So we believe that that error alone would justify reversal in that context, to the extent the Court did not rule in Beltran's, in Solis's favor, excuse me, on the statement of decision. Now, a word, if I may, about the statement of decision. Excuse me. About the statement of decision. Every factual finding in that statement of decision supported Solis's case, including the Court's credibility finding. Nevertheless, at the conclusion of that order, the Court reached the legal conclusion that there was insufficient evidence to establish an Eighth Amendment violation. As I mentioned before, that's a de novo standard that applies to that conclusion. And we believe that based on the district court's findings, it's incorrect, because this Court has held that there is a Eighth Amendment violation. An Eighth Amendment violation arises from an inmate suffering violence at the hands of other inmates where there has been an objective, sufficiently serious deprivation of rights, and second, where there has been a deliberate indifference by the prison official. We feel that to credit Solis's case in any way as to the events inherently undermines Beltran's entire case, and at the very least establishes that Solis told Beltran, I'm in trouble, help me, I'm an ex-gang member, get me out of here, and that Beltran did nothing. Beltran himself said, we have a policy where we would take these guys out if someone said they were in trouble. That alone in our mind, based on the credibility finding, establishes that test and thus would justify entry of judgment in favor of Solis. Well, the trial court judge said that your client seemed more credible than Beltran. But on the other hand, there just simply wasn't enough evidence to proceed further. He didn't carry his burden of proving by preponderance of the evidence that he should win. So he found him credible, but he just didn't give us enough, is what he was saying. Understood, Judge Alston. And again, we feel that that's a something that's a legal conclusion. And it's especially curious in light of the district court's finding in favor of Beltran on summary judgment, where he rejected the county's argument that there was insufficient evidence and said, you know, a fact-finder, if he or she credits this evidence, there's sufficient evidence here to move past summary judgment to get to trial. Then what changes is that the court finds Solis credible. So that it's difficult to see what would have undermined that original conclusion of saying that the evidence before me, principally the testimony and the witness flyer, was sufficient to get me past this. And then in the statement of decision say, and this guy is more credible, it's hard to see what happened to then undercut that conclusion that the court had reached on summary judgment. And one last thing, if I may. Kennedy, that if you took Solis' testimony as true, that that's necessarily sufficient evidence as a matter of law? In light of the Court's conclusion, yes. We believe that Solis' testimony alone, based on the Court's credibility finding and based on the fact that Beltran presented no competing version of the events, and that Beltran said, I never talked to this guy ever, to credit Solis at all, to credit Solis' testimony at all, establishes that Solis met with, spoke to Beltran. There's nothing in the record indicating he spoke to Beltran about anything other than, help me, I'm ex-gang, I've got to be moved to protective custody. So that alone, in our view, establishes an Eighth Amendment violation. Now, if one last thing I'd like to address, if I may, is the bill of costs, which, again, no matter what else happens in this appeal, Solis was taxed $1,116 for the depositions that the opposing ---- Is that an issue on appeal? Well, that was noted in our brief that as part of the we believe followed from the conclusion that there was no right to a jury trial. And I believe it was the conclusion of our opening brief. I mean, I may have missed it. I just don't recall having seen an issue raised with respect to taxing costs. I'm wary of eating up my precious time before you, but let me ---- I wanted to say, but you can tell us if I'm doing a rebuttal. On rebuttal, if I may, I'll direct you to where it is. We believe it is an issue on appeal, and that the opposing counsel in their brief on page 11, having said that it was their responsibility to pay for these briefs, to have then filed a bill of costs against Solis for $1,116 is inappropriate and unfair and, in fact, sort of is a block to the meaningful, effective access to the courts that this Court and the Supreme Court has guaranteed to pro se litigants ---- pro se prisoner litigants, excuse me. And in addition to that, that these were trial depositions, trial witnesses that otherwise would have been entitled to at most $40, to then tax $1,000 against this informer properous inmate is itself inappropriate. And again, $800 of that was for Solis's own deposition, which was taken by opposing counsel. So ---- You might look at page 34, if you agree with what he said, during your opponent's argument. If I may reserve your time, sir. You have your 4 minutes. Thank you. Okay. Good morning. I'm Ali Reza Sabori. I represent the County of L.A. Sheriff Baca and Defendant Miguel Beltran. I would like to address each of the points brought up on issue on appeal first, and then I'll be happy to take any questions you have. Maybe you could just start saying, it seems to me, first of all, I don't see any question at all that we've got jurisdiction. The notice of appeal was clearly timely under Rule 58. Secondly, it seems to me perfectly clear that this defendant did not get a RAND notice of any sort. And there's nothing in the record to show that he knew a diddly-squat about the summary judgment procedure. Third, it's perfectly clear that the district court got the absence of a jury demand wrong, because he plainly made a very clear conspicuous demand for a jury trial in the complaint. And that he should have had it. And the alternative sort of finding that the district court made is infected by his lack of understanding that a jury trial demand had, in fact, been made, and that the district court gave absolutely no explanation for refusing appointment of counsel. Now, I'm not suggesting by my assertion that counsel was required to be appointed. It's a discretionary thing, and it's very tough to get. But the reality is the district court never made any finding with respect to exceptional circumstances. So that has to be a suspect. And if each of those isn't enough, why isn't the whole thing enough just to say, wait a second, we've got to just go back to square one on this entire proceeding? Your Honor, unlike with respect to the Rand notice, unlike Rand, Plaintiff Solis here was successful in defeating summary judgment. In fact, Solis ---- In part. Excuse me? In part. But what difference does that make at this point? Well, he presented evidence, and he understood what summary judgment was about. And the fact that he prevailed and the fact that Solis even argues himself on page 34 of his appeal that he established the merits of his case and survived summary judgment establishes that he knew enough evidence to present to this Court such that it even took it past summary judgment. This is not a man who did not know anything about objections. This is not a man who did not know anything about motioning to the Court where he thought there was a shortcoming. The Rand notice is not about discovery, but rather the input ---- Maybe you're not quite hearing what I'm saying. I mean, I ticked off at least five things that it seems to me that the district court got wrong, and any one of them is enough to send it back. I mean, if you got the jury demand wrong plainly, that's an error that has to go back for retrial. And when you add up everything, it's unclear to me that anything was gotten right. With respect to, if I may address that point, as to Rand, Rand would not apply, again, as to Defendant Beltran, because his case did succeed and prevail past summary judgment. Right. Rand would also not apply with respect to the 1986 cause of action, because pursuant to that same statute, the Court found that his 1986 cause of action was untimely. Rand would not reverse Beltran. And with respect to Kola and Sheriff Baca, there was no evidence presented, and there's no demonstration by the moving party who has the burden that there was any evidence that was not presented for lack of Rand notice, nor any indication that any additional evidence would have been presented as a result of the Rand notice. Rand, again, is about the implications of summary judgment, whereas their focus is on evidentiary issues. With respect to the waiver of the case, the point of the Rand notice is to tell people that they have got to come up with evidence. So to say there is no evidence is quite circular. The evidence they point to all along is Solis's own testimony. The connection to the county and to Sheriff Baca would be through Beltran. Beltran's case survived summary judgment, and it was based on the evidence that the Court found that there was no legal finding that could be made with respect to Beltran. With respect to your issue as to the waiver of the jury trial, here the Court did specifically warn Solis in its November 3, 2004 jury trial order, which was not made part of the record by the moving party, that noncompliance with that order by any party shall constitute a jury waiver. On the March 20th the point is, as I said, the judge said in his order, look, he didn't make a demand for a jury trial. That's just wrong. He did. And so my question is, doesn't that blatant error infect his alternate view that well, you didn't really comply with the requirement of filing the jury instructions, which of course was a burden that the local rules put on the defendant, not on the plaintiff? We don't believe so because the judge specifically never did make any findings that a jury trial was waived until the pretrial conference on March 21st, and it wasn't based necessarily on the decision that no demand was made. Well, I understand not necessarily, but the first lead sentence says no jury trial was demanded, and it was. And we're talking about a pro se guy in prison. You know, how's he going to get up for a meet-and-confer order with defense counsel with respect to jury instructions anyway? Quite frankly, we don't believe that that error made by the judge overshadows his decision in his finding that there was a jury waiver, the reason being is that the Court specifically noted that the jury waiver was based on a failure to provide pretrial documents, Your Honor. I understand the Court's concern with respect to, well, you think if he did ‑‑ if he made that mistake, then he was clearly mistaken as to the rest. However, his emphasis, again, was on failure to provide pretrial documents. In fact, Mr. Solis was present at this hearing telephonically. He participated at the hearing. He even requested of this Court which witnesses he wanted to provide, and it was ordered that we provide those witnesses. As a matter of curiosity, do you feel like the State has any obligation to have corrected the district court's misapprehension that a jury trial had not been demanded? I do not believe so, because I believe, quite frankly, based on a totality of the record here, that this was harmless error. This was not the error upon which the jury was waived that found ‑‑ that was found to be a waiver of jury. This is a case where ‑‑ Do you view it as an independent alternative theory that is not affected by the fact that he thought there was no jury demand? Correct, Your Honor. We don't believe that that was the reason, and that's not what the waiver of the jury trial was based on. Although I do understand the Court's concern with respect to the fact that it was overlooked that a demand was made. Well, I mean, he explicitly ‑‑ I mean, his order, that's the lead of it. I mean, no jury trial demand was made. The record ‑‑ but the Court goes into detail with respect to the non-submission of pretrial documents. It didn't just stop ‑‑ Well, I said the plaintiff did not file a jury demand. Defendants waive jury trial and request to proceed by court trial. In addition, the court orders that trial by jury has been waived due to the non-submission of required pretrial documents. So clearly the base decision was that plaintiff did not file a jury demand. Evidently, the defendants did not correct that misapprehension. Had that not been there, if we may say, had it not been in there, that ‑‑ I agree. Had it not been in there, we'd have a different definition. We would still have the finding that there was a violation of the Court's pretrial order, however. In other words, it wasn't in and of itself the Court didn't stop right there. That's the point I'm trying to make to this Court. The Court also found that Solis' imprisonment was a substantial barrier to his being present, and the Court went, if you'll pardon the expression, bent over backwards and said, we're not going to just dismiss the case because there's an inability to prosecute. The Court ordered the trial to proceed by video presentation. Witnesses were called, and there was examination and cross-examination. Well, maybe you could explain to me what the Court's decision on the merits. What was it ‑‑ why was it, if you believe Solis' testimony, that there was insufficient evidence, that he didn't have a preponderance? If you disbelieve the deputy and you believe Solis, why was there ‑‑ why didn't he carry his burden? All the evidence that was presented, Your Honor, was Solis' testimony and a handwritten flyer which was not presented in discovery. And I would point out, the Court also had before it the deposition transcript as to Solis, which was in evidence for the trial, in which on five separate occasions ‑‑ and I'm referring to Appellate's excerpt of record 96, 134, 135, 162, 189, he indicates that around the time when he had an interview before he was allegedly placed in a gang module, he was interviewed by a group of people who were involved by this yet unknown, yet unserved individual called Vargas, not Beltran. He says so himself on five occasions. In addition to that, he provided the flyer. That's all he had to go on. That's all he presented. That's not ‑‑ Did he not mention Beltran in his testimony? He mentions that Beltran ‑‑ he met with Beltran at some point in February, but that it was Vargas who interviewed him. And it was after this interview, alleged interview, that he was supposedly placed in a gang module, where he was supposedly beat up on August the 2nd, 1999. But wasn't he implying that Beltran should have known about the interview with Vargas? He's implying that it was Vargas who did the interviewing. He's implying that based on that interview and directly and right after that interview, which supposedly took place on July 14th, 1999, he refused to be an informant. And after that interview, he was placed in a gang module, where he was beaten up, allegedly, on August 2nd, 1999. But on five occasions, in his own deposition, he points to a Vargas. Indeed. And my question was, he assumed that Beltran knew about the interview with Vargas. Did he not? That's what he claimed. Yes. And Judge Reinhart's question was, wouldn't that be sufficient to involve Beltran in the transfer? Beltran testified, and I would say would not, because Beltran himself testified he has never met this man before the deposition. But the judge said, I don't really believe you. I really believe Solis. And having said that, this raises the issue of he believes Solis. Didn't he have to believe that as a result of the Vargas interview, Beltran should have known? That's exactly the point which we believe strengthens our position, Your Honor. The judge is saying here, I believe Beltran over Solis. But even then, you didn't provide evidence, you didn't meet your burden of proof to establish your violations. And the question is, why did he not meet this burden of proof? Because all the evidence he presented was his testimony and the flyer, and that wasn't enough. I don't recall exactly, but at the trial, did he make the statement about the other prisoner who said that Beltran is the one who gave you up, that Solis is the one, I'm sorry, Beltran is the one who gave you up? I believe, in his deposition, he did say something. And was that in evidence? That's in his deposition transcript. And the deposition was in evidence at the trial? Yes. And there was no objection on a hearsay grounds to that statement? There were objections made on hearsay grounds. And was there a court ruling? The court did not rule it. The court just reviewed the deposition transcripts and the videos of the depositions. We had made a motion in limine with respect to the handwritten wanted flyer that Mr. Solis never provided to us in discovery, and the court even had ruled that it granted our motion in limine, but nevertheless, it still went out of its way and considered that evidence. In other words, you have a handwritten flyer, you have his testimony. That's all you had. And a handwritten flyer was not even supposed to be made a part of the record, but it was done nevertheless. But what makes this case difficult is the judge appeared to believe Solis and found him to be more credible than Beltran. His belief with respect to credibility was not the basis of his finding. The basis of his finding was a lack of evidence for Solis to meet his burden of proof. He did not provide such evidence. Okay. He's saying, I believe you, but you didn't give us enough. Exactly, Your Honor. Exactly, Your Honor. And if I may address the issue of appointment of counsel, simply put, the judge considered his motion for counsel. It was denied. This does not constitute abuse of discretion. Simply put, a man who is a pro se litigant, convicted in serving life without parole for murder, is not entitled to counsel to bring a civil action for money damages. I submit otherwise in our papers. Thank you, counsel. I'm going to just address Judge Nelson's point briefly. It was a much, it was much more than that, in that on Appellee's Excerpts of Record 194, which is page 194 of Solis's deposition, they discussed the July 14th meeting, which, again, was the exact same day that Solis was transferred to the gang unit. And the question is asked, you stood up, walked over to Beltran's desk and had a conversation with him there? No. Beltran came aside and was talking to him, Vargas, about something else. And that's when I told Beltran. I said, hey, Beltran, why don't you have a look at the paperwork, man, or have them call down there? I ain't supposed to be where you guys plan on putting me just because I don't want to inform for you guys. At that point, that's it. They stopped the deposition. That there is in evidence and puts Beltran at that July 14th meeting, establishes that Beltran knew that Solis was going to be transferred, that he shouldn't be, and we believe, based on a de novo review of the evidence and applying it to the legal standard, establishes that there was sufficient evidence, especially in light of the credibility determination, to find in favor of Solis. There's one other point. Well, based on that, I think we submit on the papers, barring any questions. I want to just ask you a question out of curiosity. If you were to obtain a reversal and it was sent back to the district court, we did not require or we did not substitute a verdict for your client for the verdict for the defendant, but just sent the case back to start all over again, as Judge Reimer put it. Have you thought about whether you would be willing to represent your client? Well, as part of the circuit's pro bono program, which obviously we are very good fans of, we've agreed to represent Mr. Solis in terms of this appeal. Yes. My understanding is that the central district has the same program, and my sense is that firms are bending over backwards to try and get these sorts of opportunities. And while I'm not in a position to commit my firm to additional representation beyond what we have here, I'm very confident that firms, including our own, would be very willing to undertake the representation of Mr. Solis if presented the opportunity by the district court. So, again, I'm – I can't commit my firm at this point. No, I just thought you – I just asked whether you had considered it. Obviously, you're not required to have considered it now, but I thought perhaps you had and discussed it and reached a conclusion. That's fine. Thank you. Thanks very much. Thank you.
judges: D.W. Nelson, Reinhardt, Rymer